The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

James KLEBER, Defendant–Appellee.

No. 93SA30.

Supreme Court of Colorado,
En Banc.

Nov. 1, 1993.

Robert S. Grant, Dist. Atty., Seventeenth Judicial Dist., and Michael J. Milne, Sr. Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Kristin E. Johnson, Deputy State Public Defender, Brighton, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986 & 1993 Supp.),

seeking reversal of the trial court's ruling suppressing evidence obtained during the custodial interrogation of the defendant. The trial court's decision to suppress the statements in question was based in part on its finding that the interviewing officers violated the defendant's Fifth Amendment rights by failing to cease questioning upon the defendant's request for an attorney. Because the record supports that finding, we affirm the ruling of the trial court.

## I

On July 6, 1992, M.J. (the alleged victim) contacted the Arvada Police Department and indicated that she had information concerning James Kleber (the defendant), whose wife had been reported missing five days earlier. The alleged victim then met with Detective Scott Buckley and stated that one and one-half years earlier the defendant had attempted to sexually assault her. She described the alleged incident in detail, stating that after inviting her over to discuss his marital problems, the defendant had knocked her to the ground in front of his house, forcefully kissed her mouth, squeezed her throat and touched her breasts while she was unable to move. She later told her husband about the incident but did not report this to the police because her husband was a cousin of the defendant's wife.

Based on this information, Detective Buckley prepared an affidavit for an arrest warrant which was issued on August 19, 1992. The defendant was arrested on August 20, 1992, in Salida, Colorado. The following day, Buckley and Sergeant Mike Roemer drove to Salida to pick up the defendant. During the drive back to the Arvada Police headquarters, no questions were asked or statements made, although the record indicates that Buckley and Roemer did discuss between themselves the investigation regarding the disappearance of the defendant's wife. After their arrival in Arvada, the defendant was booked-in and taken to an interview room. At that time, the defendant had not yet been brought before a judge either in Sali-da or in Arvada to be advised of the nature of the charges against him. The defendant had only been told that he was being held regarding "an alleged sexual assault."

The interview began with Detective Buckley advising the defendant of his *Miranda* [1] rights from a written departmental form and asking the defendant if he was willing to answer some questions. The defendant then invoked his *Miranda* rights, requested an attorney, and remarked that he wished to discuss a prior polygraph test with the attorney. He apparently surmised that the investigation related to a past incident, approximately twenty years earlier, involving his daughter for which the defendant had taken a polygraph test. Detective Buckley was aware of the prior investigation to which the defendant referred. The trial court found that Buckley then explained to the defendant that the police were not investigating that particular incident and that he did not need to discuss it with an attorney because the statute of limitations had expired. Neither Buckley nor Roemer specified, however, the topic of the pending interrogation.

After Buckley again asked the defendant whether he wished to have an attorney present and whether he would answer some questions, the defendant finally agreed to waive his right to have an attorney present. Buckley then readvised the defendant of his *Miranda* rights, and the defendant signed a written form acknowledging that he understood the rights he was waiving. The interrogation then commenced and lasted approximately twenty-two minutes. During that time, the defendant stated that he had known the alleged victim for several years. He also admitted that he had kissed her once while she was at his home. The defendant denied, however, having ever seen the alleged victim express any anger and further denied having been slapped by her. After Buckley remarked to the defendant that he "should tell the truth for one time in his life," the defendant told Buckley to throw him in jail

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

and get him an attorney. The interrogation terminated at that point.

The defendant was charged with third degree sexual assault, under section 18–3–404, 8B C.R.S. (1986). He entered a plea of not guilty and moved to suppress the statements he had made during the custodial interrogation. At the suppression hearing, the defendant argued that the statements: (1) were obtained in violation of his rights under the Fifth Amendment to the United States Constitution and article II, section 18, of the Colorado Constitution because the police failed to honor his initial request for an attorney; (2) were the result of an invalid waiver of *Miranda* rights because he was never properly informed of the charges which would be the subject of the interrogation; and (3) were obtained in violation of Rule 5 of the Colorado Rules of Criminal Procedure. The trial court found that because the defendant "invoked his rights to have an attorney and was talked out of it by the detective," the subsequent police interrogation violated the defendant's rights under *Miranda*. The trial court also found that any purported waiver of such rights by the defendant was ineffective due to the failure by the police to adequately inform him of the nature of the charges against him.[2] As a result of its rulings, the trial court suppressed the defendant's statements. The People appeal, arguing that the police committed no constitutional or rule violations.

## II

In *Miranda*, the United States Supreme Court established the principle that once a suspect requests representation by counsel, all police-initiated interrogation must cease until the accused has consulted with an attorney. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628. In *Edwards v. Arizona*, the Supreme Court further emphasized that

> an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel

has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), *quoted in People v. Benjamin*, 732 P.2d 1167, 1169–70 (Colo.1987).

■ This "bright line" test in *Edwards* does not require the police to refrain entirely from questioning an accused, however, in situations where the accused's request for an attorney is "ambiguous." *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984); *Benjamin*, 732 P.2d at 1170–71. When reviewing a defendant's statement for an alleged ambiguity, courts must give "a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). In *Benjamin*, we held that when an accused makes an ambiguous statement that might reasonably be construed as a request for counsel, "interrogation must cease immediately except for very limited questions designed to clarify the ambiguous statement or to clarify the accused's wishes regarding the presence of counsel." *Id.* at 1171 (adopting the test set forth in *Thompson v. Wainwright*, 601 F.2d 768 (5th Cir.1979)).

■ A request for an attorney must be ambiguous from its inception, however, in order to permit such limited further questioning of the defendant by the police. In *Smith*, for example, the defendant initially responded to the suggestion by the police that he had a right to have a lawyer present at the interrogation by stating that "I'd like to do that." 469 U.S. at 93, 105 S.Ct. at 491. The police continued to question Smith, however, as to whether or not he wished to have an attorney present, and Smith eventually stated that "Yeah and no, uh, I don't know what's what, really." *Id.* The United States Supreme Court held that Smith's initial request for counsel was

2. The trial court appears to have concluded that this failure by the police to inform the defendant of the specific nature of the "alleged sexual assault" for over twenty-four hours while the defendant was in police custody constituted a violation of Crim.P. 5.

clear and unambiguous, and the fact that his later statements might be construed as equivocal or ambiguous was not relevant to the question of whether Smith had exercised his right, under *Miranda* and *Edwards,* to end the interrogation:

> Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease.... We hold only that, under the clear logical force of settled precedent, an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.

*Id.* at 98, 100, 105 S.Ct. at 494, 495 (emphasis in original).

■ The case before us is similar to, and controlled by, *Smith.* Here the trial court found that "when [the defendant] thought [the topic of the interrogation] was a specific incident, what he did do was invoke his *Miranda* rights and say 'I want an attorney'...." This finding is supported by the evidence.[3] The record shows that the defendant's request for an attorney was followed[4] by a comment from the defendant revealing that he was under the impression that the interrogation would focus upon a prior alleged sexual assault involving the defendant and his daughter. At this point, the defendant's request for an attorney was not ambiguous or equivocal. *Benjamin,* 732 P.2d at 1171. The fact that the police deliberately failed to disclose to the defendant the subject matter of the interrogation cannot transform his clear request for counsel into an ambiguous statement. An accused does not fail to exercise the rights established in *Miranda* and *Edwards* solely because he or she mistakenly, and in this case justifiedly,

believes the pending interrogation will focus on a matter which the police only later explain will not be discussed.

■ Finally, even assuming, *arguendo,* that the defendant's statement in fact was ambiguous, the subsequent statements by the interviewing officers fail the limited inquiry test. *Benjamin,* 732 P.2d at 1171. The record shows that after the defendant asked to speak with an attorney, the officers informed him that he would not need to consult one for the prior incident because the statute of limitations had expired. The officers then asked the defendant if he still wanted an attorney and whether he would answer some questions for them. The statement by the police as to the expiration of the statute of limitations does not qualify as one of those "very limited questions designed to clarify the ambiguous statement or to clarify the accused's wishes regarding the presence of counsel." *Id.* By telling the defendant that he need not worry about the prior incident, the police were merely assuaging the defendant's concerns as to the possible scope of the discussion, in an effort to convince him that he would not need to have an attorney present. *See Arizona v. Roberson,* 486 U.S. 675, 683–84, 108 S.Ct. 2093, 2099, 100 L.Ed.2d 704 ("[T]he presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation.... [A] suspect's request for counsel should apply to any questions the police wish to pose...."). Such comments fall outside the permissible scope of

**3.** Detective Buckley was the only witness who testified at the suppression hearing. His testimony as to the exact wording of the defendant's request for an attorney differs somewhat between direct and cross examination. Although the prosecutor indicated that the interview with the defendant was tape-recorded and that the People were willing to introduce the recording on redirect, the tape itself was never formally offered into evidence and is not in the record before us. The trial court is the finder of fact,

and we defer to its findings when supported by the evidence.

**4.** Although there was some dispute in the record as to whether the defendant's remark about the prior incident involving the polygraph test was tied to his initial request for an attorney, it is undisputed that the request for an attorney preceded the reference to the prior incident.

inquiry once an accused has made an arguably ambiguous request for counsel.

Because we believe the defendant's statements were properly suppressed due to the police officers' failure to cease the interrogation after the defendant requested an attorney, we do not reach the other issues raised by the defendant. Accordingly, we affirm the trial court's ruling suppressing the statements made by the defendant during the police interrogation.

ROVIRA, C.J., dissents, and VOLLACK, J., joins in the dissent.

### Chief Justice ROVIRA dissenting:

The majority concludes that defendant's request for counsel was clear and unambiguous, and therefore, affirms the trial court's ruling suppressing statements made by defendant during an interrogation. Because I do not believe the record supports this conclusion, I would reverse the trial court's suppression ruling and remand the case for a supplemental evidentiary hearing to determine whether defendant's request for counsel was ambiguous and, if so, whether further questioning of defendant fell within the permissible limits set forth in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

### I

The facts pertinent to this dissent occurred after defendant arrived at the Arvada police station. Once defendant was booked-in, Detective Buckley and Sergeant Roemer began interviewing him at approximately 4:45 p.m. on August 21, 1992. Buckley advised defendant of his *Miranda*[1] rights from a written departmental form. Defendant was told that the police officers wanted to question him regarding "an alleged sexual assault." Evidently, this was the first time defendant was informed of the reason for his arrest. What transpired next was a source of some confusion at the suppression hearing. At the hearing, Buckley testified that defendant stated[2] that he wished to speak to an attorney to discuss a polygraph test. Buckley was aware that defendant had taken a polygraph test in the course of a sexual assault investigation approximately 20 years earlier. Apparently, trying to clarify what defendant meant when he made this request for counsel, Buckley inquired as to whether defendant was referring to the polygraph test taken in connection with the previous investigation. When defendant responded affirmatively, Buckley informed him that they were not investigating that incident, and Roemer informed defendant that the statute of limitations had run on that potential charge. Buckley then asked if defendant still wished to consult an attorney. However, knowing the police were not interested in the prior investigation, defendant did not reassert his desire to see an attorney; rather, he agreed to answer some questions. Buckley readvised defendant of his *Miranda* rights and asked if defendant understood them. Defendant not only said he did, but he signed a waiver form so indicating.

Defendant was charged with third degree sexual assault.[3] He entered a plea of not guilty and moved to suppress statements he made during the interview.[4] At the suppression hearing, defendant argued that the statements: (1) were obtained in violation of his rights under the Fifth Amendment to the United States Constitution and article II, section 18, of the Colorado Constitution because his initial request for an attorney had not been honored; (2)

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** This characterization of defendant's request is used simply in the interest of clarity and should not be regarded as a conclusion as to what precisely was said by either the defendant or Detective Buckley. *See infra* § II(B).

**3.** *See* § 18–3–404, 8B C.R.S. (1986).

**4.** The interview lasted 22 minutes. During that time, defendant admitted kissing the victim once while she was at his home. He also recalled that he telephoned her and apologized for kissing her. After Buckley remarked that he "should tell the truth for one time in his life," defendant told Buckley to throw him in jail and get him an attorney. At this time, the interview ended and defendant was not questioned any further.

were the result of an invalid waiver of *Miranda* rights because he was never properly informed of the charges about which he was to be questioned; and (3) were obtained in violation of Rule 5 of the Colorado Rules of Criminal Procedure. The trial court agreed with at least two of defendant's arguments and ordered the statements suppressed.[5] As the majority opinion only addresses whether defendant clearly and unambiguously requested counsel, I will do the same.

## II

### A

In *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), the Court held that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." However, the rule of *Edwards* is not absolute. Specifically, if a suspect's request for counsel is either ambiguous or equivocal, the authorities may properly question the suspect for the limited purposes of clarifying the suspect's ambiguous statement or to elucidate the suspect's wishes regarding the presence of counsel. *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Nash v. Estelle*, 597 F.2d 513 (5th Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); and *People v. Benjamin*, 732 P.2d 1167 (Colo.1987).

Thus, in evaluating the trial court's ruling, we must examine the record to determine whether defendant clearly invoked his right to counsel. Because I would find that the record is unclear on this issue, there is no need to determine whether further questioning of defendant fell within the limits set forth in *Smith* and its progeny.

### B

Based on the record, it is apparent that defendant requested, in some sense, the assistance of counsel. It is far from obvious, however, whether this request was clear and unambiguous, or equivocal and conditional so as to bring Buckley's further questions within the purview of *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), and if within *Smith*, to determine if defendant effectuated a valid waiver of his right to counsel.

The record of the suppression hearing reveals that after originally reading defendant his *Miranda* rights, Buckley testified that defendant replied "he would like an opportunity to discuss the polygraph that he had taken in reference to this incident." The prosecution then inquired, "Did he say it pretty much in that way as all one sentence or were—was the fact that he wanted an attorney and he wants to discuss the polygraph interpreted by a question from you at all?" Buckley responded, "No, it was basically all—all in one. He said he wanted to talk with an attorney and discuss with him in reference to the polygraph."

---

**5.** It is unclear from the record upon what legal basis the trial court suppressed defendant's statements. In response to the Peoples' request to play the tape recorded interview, the trial court stated:

> I'm not exactly sure—well, *that may be an issue*—[defendant's request for counsel and possible waiver] but I'm not exactly sure that's the definitive issue. The issue, as I see it at least—well, it's two-fold, and that's there may have been a violation of Rule 5 of the Criminal Rules of Procedure. Greater than that is whether or not in fact—well, there are two issues—whether or not there was a proper waiver of the *Miranda* rights, but the issue comes as to whether or not there was a prop-

er waiver of *Miranda* rights as to the question of whether or not the defendant was properly advised as to what the charge was; and I think *if you get past those two issues, Mr. Poland, I will then go and listen to the tape to see whether or not he actually did waive or whether or not he didn't waive....*

(Emphasis added.) The trial court proceeded to issue its ruling suppressing the statements; however, the court never asked the prosecution to play the tape recording of the interview. This fact suggests that whether the interrogating officers failed to honor defendant's request for an attorney was not a basis for the court's decision.

On cross-examination, counsel asked Buckley whether, following his advisement, defendant stated, "I'd like to have an attorney"? Buckley responded, "Well, he said that in conjunction with the other part of that I previously testified to."

On redirect, the prosecution indicated that he would like to play the tape recorded interview where the request for counsel and the discussion of the polygraph test and prior investigation occurred. While the exact reason for playing the recording is not stated, it appears that counsel sought to play the recording because there was confusion regarding precisely what defendant said and how Buckley responded. Though Buckley was the sole witness at the hearing and the tape might have clarified exactly what was said by Buckley and defendant, the trial court did not allow the People to play the tape at the suppression hearing.[6]

From the preceding facts, the majority concludes that defendant's request for an attorney, based upon his assumption that the interrogation involved a previous sexual assault investigation, was neither ambiguous nor equivocal. Maj. op. at 1364. The majority incorrectly asserts that "[a] request for an attorney must be ambiguous *from its inception* ... to permit ... limited further questioning of the defendant...." Maj. op. at 1363 (emphasis added). In fact, in deciding if a request for counsel is ambiguous, the focus is not just on the request itself; rather, questioning does not have to cease if the *circumstances leading up to the request for counsel render the request ambiguous.* Smith v. Illinois, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984) (emphasis added). The source of confusion and uncertainty surrounding defendant's request for counsel arises from the fact that he had been investigated for a sexual assault 20 years prior to this arrest, and he believed the present arrest and questioning involved that incident. Because of the prior investigation and Buckley's knowledge of the prior investigation, the circumstances of the interview are such that it is unclear whether defendant requested counsel to discuss his old polygraph test and then, upon realizing the prior investigation was not at issue, waived his right to counsel; or whether he requested counsel be present in a general sense pursuant to *Miranda.*

## III

The role of the trial court during a suppression hearing is critical. "In ruling on a motion to suppress a confession or inculpatory statement, a court must engage in both factfinding and law application." *People v. Gennings,* 808 P.2d 839, 844 (Colo.1991). Factual findings by the trial court must provide a reviewing court with "a clear understanding of the basis of the trial court's decision and ... enable [the appellate court] to determine the ground on which it reached its decision." *Mowry v. Jackson,* 140 Colo. 197, 201–02, 343 P.2d 833, 836 (1959). In the course of suppressing defendant's statements, the trial court stated "he [defendant] then invoked his rights to have an attorney and was talked out of it by the detective." There is no evidence to support the contention that Buckley talked defendant out of invoking his right to counsel; therefore, not only are we not bound by this finding of fact, *see People v. Johnson,* 653 P.2d 737, 740 (Colo. 1982) (factual findings with no basis in the trial record are clearly erroneous and must be set aside), but if the court did indeed find defendant's request for counsel was unambiguous and not honored, the trial court apparently relied upon this incorrect fact. Compelled by these considerations, along with the fact that the court failed to listen to the tape recording which could have clarified whether defendant clearly invoked his right to counsel, I believe the trial court failed to provide a clear understanding of the basis of its decision by not sufficiently examining whether defendant's request for counsel was ambiguous or clear.

## IV

While the exclusion of evidence is sanctioned to deter and remedy against the

---

6. *See supra* n. 5.

abuse of constitutional rights, *People v. Hamilton*, 666 P.2d 152 (Colo.1983), it "is not intended as a barrier to prevent the police from carrying out their functions and duties when the police action is reasonable." *People v. Eichelberger*, 620 P.2d 1067, 1071 n. 2 (Colo.1980). Due to the serious consequences of excluding relevant and probative evidence, I believe this case should be remanded to illuminate the facts surrounding the request for counsel to determine if the police action was a reasonable attempt to clarify defendant's wishes, or rather, a deprivation of his constitutional rights.

In sum, while the record supports the trial court's conclusion that defendant in some way requested the assistance of counsel, the court made no findings regarding the issues of whether that request was ambiguous and if so, whether the further questioning of defendant without the presence of counsel was constitutionally permissible, and if permissible, whether defendant waived his right to counsel. Because the record is insufficient, I would not reach the merits of the People's argument. I would reverse the trial court's suppression ruling and remand the case with instructions to more fully assess the merits of defendant's claim that his request for counsel was not honored by the authorities in violation of the United States and Colorado Constitutions.

Accordingly, I respectfully dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.