The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Chad BRODER, Defendant–Appellee.

No. 09SA228.

Supreme Court of Colorado, En Banc.

Jan. 11, 2010.

Kenneth R. Buck, District Attorney, Michael J. Rourke, Assistant District Attorney, Brandi Lynn Nieto, Deputy District Attorney, Greeley, CO, Attorneys for Plaintiff–Appellant.

Reilly Pozner LLP, Iris Eytan, Denver, CO, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

## I.  Introduction

In this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2009), the People seek reversal of a trial court ruling suppressing statements obtained during the custodial interrogation of defendant Chad Broder.  The trial court ordered suppression after finding that Broder made an unambiguous response to a question of whether he wanted an attorney and that the subsequent questioning by the interrogating officer did not scrupulously honor Broder's request for counsel.  Because we conclude that Broder's request for counsel was ambiguous, we hold that the interrogating officer's subsequent clarifying questions were permissible.  Therefore, we reverse the trial court order suppressing Broder's statements.

## II.  Facts and Procedural History

The defendant, Chad Broder, is charged with attempted sexual assault and unlawful sexual contact arising from an incident that happened while Broder was on duty as a police officer for the Town of Erie. Broder allegedly made unwanted sexual advances toward an eighteen-year-old girl whom he had arrested and was transporting to county jail. After the alleged victim reported what happened to the police, an investigation was conducted and Broder was arrested.  Detective Dennis Lobato of the Greeley Police

Department interrogated Broder following his arrest.

The interrogation was recorded on DVD; however, Broder's manner of speaking in incomplete sentences and broken phrases, in combination with the poor quality of the audio recording, make it difficult to discern exactly what he said. The People and Broder have each provided a transcript of the interrogation; nevertheless, because the two versions differ in important respects, we use them for comparison to the DVD but do not rely on either transcript for its accuracy. Our analysis is based on our independent review of the interrogation video.

At the outset of the interview, Detective Lobato advised Broder of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including the right to have counsel present during interrogation. Shortly thereafter, Broder asked whether he could speak to his lieutenant to see if his lieutenant could get "coverage" for him, but the end of Broder's sentence is obscured. It is possible that Broder said "coverage" for him "lawyer-wise," after which Broder mumbled and the poor audio completely obscured the rest of his words. Broder's own transcript does not contain the words "lawyer-wise." Rather, it suggests that he said, "for what it was." In any event, Detective Lobato seemed confused about Broder's meaning and reminded him that "this is a criminal case; I'm not sure what you're referring to." Broder then appeared to stall, saying, "Or, you know, for the, you know ...," but he eventually responded, "I was wondering if I could talk to my lieutenant to make sure, just because I was on duty at the time, you know," and then he abruptly said that he knew exactly which incident the detective was there to question him about. Broder stated, "Yeah, this is ... I know what this is all about. I do. Umm. And I mean, I don't have a problem talking to you, but I—just since I was on duty at the time, you see what I'm saying?" Detective Lobato responded, "Uh huh," but Broder interrupted to say something that was indiscernible on

the recording, and then he said he was probably going to lose his job, after which his sentence trailed off.

Immediately following this, Detective Lobato attempted to clarify Broder's statements by asking whether Broder wanted to speak to his lieutenant to determine if he had "coverage for counsel" and what he wanted to do if he did not have such coverage. Broder appeared to agree that he was concerned about getting coverage for counsel, but immediately added, "I'll talk to you." Once more, Detective Lobato tried to clarify by stating, "Because here's the deal. Here's where I'm at. I need to know now—," and Broder interrupted to agree, saying, "You need to know this,"[1] and immediately afterward he said, "I'll talk to you." Then Detective Lobato, still tying to finish his sentence said, "—if you want to talk to an attorney—," but he was interrupted again by Broder saying, "No, I'll talk to you." A quick exchange followed, during which Detective Lobato attempted several times to clarify Broder's request and Broder talked over him to say that he wanted to talk to the detective, and then he signed the *Miranda* waiver form. Detective Lobato concluded by telling Broder to let the detective know if Broder no longer wished to talk to him. Broder agreed and Detective Lobato commenced his questioning. During the subsequent interrogation, Broder made incriminating statements.

Later, Broder moved to suppress the statements he made during the interrogation with Detective Lobato. A suppression hearing was held, during which Detective Lobato testified. The trial court issued a written order suppressing all statements made during the interrogation, finding that Broder gave an unambiguous and unequivocal response to Detective Lobato's question of whether he was concerned about "coverage for counsel," and by continuing to speak to Broder, Detective Lobato had not scrupulously honored Broder's desire to speak to an attorney in violation of his constitutional rights under *Miranda*. The People then

---

1. Although Broder's response was partially obscured because his hands were in front of his mouth and he was speaking over the detective, based on our review of the DVD and Detective Lobato's testimony at the motions hearing, we conclude that Broder said, "You need to know this."

filed this interlocutory appeal pursuant to C.A.R. 4.1, seeking reversal of the order suppressing Broder's statements.

## III. Analysis

We hold that Detective Lobato was permitted to ask additional questions to clarify Broder's ambiguous statements before obtaining a valid waiver. Therefore, we reverse the order suppressing Broder's statements because we conclude that the record does not support the trial court's finding that Detective Lobato refused Broder's unambiguous request for counsel.

When reviewing a suppression order, we are presented with a mixed issue of law and fact. *People v. Adkins,* 113 P.3d 788, 790 (Colo.2005). We defer to a trial court's findings of fact where there is sufficient evidence in the record to support them; however, the trial court's conclusions of law are subject to our de novo review. *Id.* at 791. Furthermore, like the trial court, we review the totality of the circumstances in determining whether an accused invoked the right to counsel with sufficient clarity. *Id.* at 790.

In *Miranda,* the United States Supreme Court first articulated that the Fifth Amendment to the United States Constitution requires certain procedural safeguards in order to ensure that an accused is aware of the right to remain silent and to consult with counsel during a police interrogation. 384 U.S. at 444–45, 86 S.Ct. 1602. Thus, the Court held that the Fifth Amendment requires that, before custodial interrogation of an accused, the police must advise the person that he has a right to remain silent; that any statements made may be used as evidence against him; that he has a right to consult with an attorney before police interrogation and to have an attorney present during any interrogation; and that an attorney will be provided to him without cost if he cannot afford to retain one. *Id.*

Following *Miranda,* the Court further explained that once an accused invokes the Fifth Amendment right to counsel during custodial interrogation, all police questioning of him must cease until counsel is made

available to him, unless the accused later initiates communication with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *People v. Wood,* 135 P.3d 744, 753 (Colo.2006). However, only where the accused's statements concerning the right to counsel are unambiguous must the police cease all questioning. *Davis v. United States,* 512 U.S. 452, 460–61, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *People v. Bradshaw,* 156 P.3d 452, 458 (Colo. 2007) (citing *People v. Benjamin,* 732 P.2d 1167, 1170 (Colo.1987)). A statement concerning the right to counsel is ambiguous when it gives rise to opposing inferences. *Adkins,* 113 P.3d at 792 (citing *Benjamin,* 732 P.2d at 1171).

The People concede that Broder's statements were made in the course of custodial interrogation. Therefore, our inquiry is limited to whether Broder made an unambiguous request for counsel that Detective Lobato failed to honor.

We use an objective standard to determine whether an accused invoked the right to counsel. *Davis,* 512 U.S. at 458–59, 114 S.Ct. 2350. An accused unambiguously invokes the right if the request for counsel is sufficiently clear such that a "reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Adkins,* 113 P.3d at 792 (citing *Davis,* 512 U.S. at 461–62, 114 S.Ct. 2350; *People v. Romero,* 953 P.2d 550, 556 (Colo. 1998)). We have interpreted this standard to mean that a statement reflects a desire for counsel when it "puts the officers on notice that the defendant intends to exercise his right to counsel." *Id.* Additionally, the United States Supreme Court has emphasized that a Fifth Amendment request for counsel under *Miranda* only pertains to police interrogation. *See McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (holding that request for assistance of attorney at bail hearing was not a request for counsel for purposes of *Miranda* ).

We recognize that suspects "may not be legally sophisticated or paragons of clarity in their use of language." *Romero,* 953 P.2d at 554–55. Indeed, requests for counsel made

in different terms may be unambiguous depending on the particular characteristics of the accused and the circumstances of the police interview. *Romero,* 953 P.2d at 554. For instance, such factors may include a person's youth, *see People v. Harris,* 191 Colo. 234, 552 P.2d 10 (1976) (eighteen-year-old boy with no criminal history); background, *see People v. Redgebol,* 184 P.3d 86 (Colo.2008) (Sudanese immigrant); phraseology, *see Romero,* 953 P.2d 550 (street slang); nervousness or distress, *see Wood,* 135 P.3d 744 (Colo.2006) (visibly upset suspect); expression of authority, *see People v. Cerezo,* 635 P.2d 197 (Colo.1981) (tentative statement, "I think I better have a lawyer"); or feelings of intimidation or powerlessness, *see Davis,* 512 U.S. at 470, 114 S.Ct. 2350 (Souter, J., concurring) ("[I]ndividuals who feel intimidated or powerless are more likely to speak in equivocal or nonstandard terms even if no ambiguity or equivocation is meant.") (citing W. O'Barr, *Linguistic Evidence: Language, Power, and Strategy in the Courtroom* 61–71 (1982) ). Accordingly, we prefer to give a broad, not narrow, interpretation to requests for counsel. *See People v. Kleber,* 859 P.2d 1361, 1363 (Colo.1993) (quoting *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). We note, however, that no such considerations account for the ambiguity surrounding Broder's statements to Detective Lobato during his interrogation.

This case involves an interrogation of one police officer by another police officer concerning an incident that occurred while the officer was on duty. This fact goes a long way toward explaining why Broder's statements were ambiguous and therefore explains why Detective Lobato required further clarification. First, as a police officer, Broder was familiar with *Miranda* and the arrest process, which he acknowledged during the interrogation. Indeed, it is clear from the interrogation video that Broder's inability to clearly articulate his request was not because he was speaking in an overly-deferential manner or because he lacked sophistication, or even because he was too nervous and

upset. Rather, it appears that Broder was merely undecided about whether he wanted to invoke the right to counsel. Throughout the exchange, Broder temporized and obfuscated by mumbling and speaking in hesitant half-sentences that trailed off or cryptically left Detective Lobato to fill in the blanks. This continued up until the point where Detective Lobato's clarifying questions required a direct answer, and then Broder unequivocally decided not to invoke his right to counsel.

In addition to Broder's ambiguous and equivocal manner of speaking, additional ambiguity results from the fact that, as a police officer, Broder may be entitled to coverage for counsel for civil or administrative matters that relate to an officer's conduct while on duty.[2] Because Broder first stated that he wanted to talk to the detective, and then repeatedly mentioned that he was on duty as an officer at the time of the incident and that he feared losing his job, his concern about coverage for counsel was ambiguous in terms of whether it specifically related to requesting counsel for the interrogation. Indeed, it appears from the video that Broder was weighing his options and wanted to know whether, if he chose to be represented by an attorney at some future time, "he would be able to have such representation without cost to himself." *Adkins,* 113 P.3d at 792 (citing *Benjamin,* 732 P.2d at 1171 (holding that request for determination of indigency indicates accused is "considering his options" and does not constitute an unambiguous request for counsel) ). Likewise, Broder may have wanted to speak to his lieutenant to determine whether he could get coverage for counsel in the event of civil or administrative action taken against him as a police officer because he was on duty at the time. In fact, Detective Lobato testified at the motions hearing that this was his understanding of why Broder wanted to speak to his lieutenant.

Given the totality of the circumstances, it was ambiguous whether Broder was considering whether to have counsel present during

---

**2.** During the motions hearing, Detective Lobato testified that he was not aware of what types of coverage Broder had because coverage varies based on the specific jurisdiction and Broder and the detective did not work in the same jurisdiction.

the interrogation or whether he was merely considering a future course of action. Therefore, Detective Lobato was justified in conducting a limited inquiry intended to resolve this ambiguity.

Nevertheless, Broder points to a particular exchange during the interrogation that he argues was a clear and unambiguous request for counsel pursuant to *Miranda*. After the considerable confusion about what Broder meant when he said that he wanted to talk to his lieutenant, Detective Lobato attempted to understand what Broder meant by saying, "Correct me if I'm wrong. You want to call your lieutenant to determine if you have counsel, sorry, coverage for counsel?" and then rephrased, "attorney?" In response, Broder said, "Yeah," and Detective Lobato, uncertain about whether determining "coverage for counsel" was intended to invoke the right to counsel for the purposes of the interrogation, followed up by asking what Broder wanted to do if he did not have coverage for counsel by saying, "And I guess if you don't …," and Broder responded, "I'll talk to you."

It is at the point where Broder responded "Yeah" to Detective Lobato's rephrasing that Broder argues he made an unambiguous and unequivocal request for counsel. The trial court likewise focused on this precise point in the interrogation. However, it is clear from observing the entire exchange that this reasoning ignores the fact that there was still considerable ambiguity about whether Broder's concerns about coverage related to the interrogation or, rather, whether they were related to more general concerns about the future cost of obtaining counsel for related actions taken against him. This explains why Detective Lobato followed up with the question, "And I guess if you don't …," meaning, presumably, that if Broder did not have coverage for counsel, whether he wished to continue to speak to the detective. At that point in the interrogation, a reasonable officer under those circumstances would not be on notice that Broder intended to invoke his right to counsel for the purposes of the interrogation. *See McNeil,* 501 U.S. at 178, 111 S.Ct. 2204.

Indeed, it was not until the very next exchange, where Detective Lobato's clarification questions required a definitive answer about whether Broder wished to invoke his Fifth Amendment right to counsel, that Broder appeared to finally come to a decision. Detective Lobato said, "—I need to know now—if you want to talk to an attorney—then just tell me you want to talk to an attorney—," but Broder interrupted him four times in the course of this one sentence to say, "You need to know this. I'll talk to you. No, I'll talk to you. I'll talk to you." As if to underscore the finality of his decision, Broder took a moment to sign the portion of the *Miranda* waiver form that indicated that he wished to speak to the detective. Detective Lobato attempted one last time to make certain that Broder was not invoking his right to have an attorney present during the interrogation by saying, "You know how this works. At any time, if you wish not to talk anymore, just tell me. Are we clear on that?" and Broder responded, "Yeah."

It is important to note that the entire foregoing exchange occurred in a matter of several seconds, during which time Broder repeatedly talked over Detective Lobato's reasonable attempts at clarification. By the time Detective Lobato resolved the ambiguity regarding Broder's initial statements, Broder made it clear to the detective that he did not intend to invoke his Fifth Amendment right to counsel during the interrogation by repeatedly saying that he wanted to talk to the detective and by signing the *Miranda* waiver form. Furthermore, Broder's statement, "You need to know this," although it occurred some time after his request to speak to his lieutenant, underscores the fact that, as a police officer, Broder was aware that invoking the right to counsel would effectively prevent any further interrogation. This awareness reveals that Broder's prior ambiguous and equivocal statements were the result of Broder's indecision, not Broder's lack of sophistication or knowledge of the process, and did not constitute a request for counsel.

Although Broder's responses to Detective Lobato's final questions of clarification were unequivocal—Broder wanted to talk to the

detective without an attorney present—Broder argues that we should disregard the statements where he said that he wanted to talk to the detective because those statements demonstrate that Detective Lobato attempted to talk Broder out of his initial request for counsel in violation of *Edwards.* Broder emphasizes that the purpose of the *Edwards* bright-line test is to prevent the police from wearing down the accused through further questioning that will "persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Smith v. Illinois,* 469 U.S. 91, 98–99, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Thus, Broder argues that his statements, "I'll talk to you. No, I'll talk to you," were merely the result of Detective Lobato's continued questioning. We disagree.

Detective Lobato's statement, "—if you want to talk to an attorney—then just tell me you want to talk to an attorney—," was not an attempt, intentional or otherwise, to use Broder's post-request responses to "cast retrospective doubt on the clarity of the initial request." *Kleber,* 859 P.2d at 1364 (citing *Smith,* 469 U.S. at 97–98, 105 S.Ct. 490). Rather, because Broder's statements were plainly ambiguous, Detective Lobato was making a permissible, limited inquiry for the "sole purpose of determining if an attorney has been requested." *Bradshaw,* 156 P.3d at 458 (citing *Benjamin,* 732 P.2d at 1170–71).

We hold that Detective Lobato was justified in engaging in a limited inquiry to clarify Broder's ambiguous and equivocal statements to determine if Broder wished to invoke his Fifth Amendment right to counsel. In this case, the ambiguity was not a result of Broder's lack of sophistication or inability to articulate; rather, the ambiguity was a result of Broder's palpable indecision about whether he wanted to invoke his right to counsel, exacerbated by the contextual ambiguity arising from his position as a police officer. Because Detective Lobato's clarifying questions clearly established that Broder was not requesting an attorney for the interrogation, we reverse the trial court's ruling suppressing Broder's statements.

## IV. Conclusion

We hold that the record does not support the trial court's finding that Broder made an unequivocal request for counsel pursuant to *Miranda.* Therefore, we reverse the trial court order suppressing Broder's statements to Detective Lobato and remand this case for further proceedings.

Justice RICE does not participate.