2012 CO 45

## The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

## Michael Edward LYNN, Defendant–Appellee.

### No. 12SA97.

Supreme Court of Colorado, En Banc.

June 18, 2012.

Thirteenth Judicial District, Robert E. Watson, District Attorney, H. Zachary Balkin, Deputy District Attorney, Michael Whitney, Deputy District Attorney, Sterling, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Damon Brune, Deputy Public Defender, Sterling, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the People challenge an order suppressing incriminating statements made by Michael Edward Lynn while in custody. The trial court held that the statements came after Lynn's unambiguous request for counsel. After such a request, it is unconstitutional for police officers to continue questioning. If they do continue interrogation, in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and subsequent cases, the defendant's statements made after the request are inadmissible. We agree with the trial court and hold that the defendant's question, "When can I talk to a lawyer?" was an unambiguous request for counsel. Accord-

ingly, we affirm the order of the trial court suppressing Lynn's statements.

## I.

¶2 At the time of the questioning, Lynn was already being detained for unrelated parole violations. Sterling Police Department Investigator Jeff Huston then met with Lynn in a booking cell and questioned him regarding allegations of assault, kidnapping, and menacing. While Huston was reading Lynn his *Miranda* rights, Lynn asked, in an assertive tone, "When can I talk to a lawyer?" Huston responded, "You want to talk to a lawyer? You say that, I'm done. Do you want to talk to a lawyer now? 'Cause I, if you do, I got to go. Alright bud? And that's fine." Lynn then asked, "If I do this, can I also talk to a lawyer after?" Huston responded, "Absolutely." As can be heard on the recording of the interrogation, Huston continued, speaking very quickly:

> Absolutely. Oh yeah, this isn't over. I want to hear your side of it now so I can get going with the case and figure out what I'm going to tell the DA. OK, 'cause all I have is one side of the story. I have your one half with all the witnesses saying this, I want to hear why you did this.... [Discussion of the likelihood of Lynn's mother testifying in court (10 seconds).] And that's what I want to hear from you. I want to hear your complete side of it. OK? And that is important. Alright, no, but you got to sign the bottom, and I need your right hand, dude. You need another clipboard or something? ... [Adjustment of Lynn's handcuffs (13 seconds).]
>
> And like I said, you don't have to tell me anything, you can just tell me anything you want to talk about. Dude, this is where you got to read this part. Do you wish to still speak to me with these rights in mind, if that's the case? Now like I said, you can tell me anytime to pound the sand get out of here I don't want to talk about it. OK? So what's your side of it? So I can hear that side of it, so I can present that with the case, man. 'Cause I really am, I'm looking at these two sides of it, I don't want to present what I have, a brutal assault by itself without any circumstances,

you know what I mean? It's like looking at something in war. You look at somebody shooting somebody in war, you know what I mean? They're at war, there is a circumstance. Why did you do what you did?

Lynn then made incriminating statements.

¶3 The trial court suppressed the statements Lynn made after he asked, "When can I talk to a lawyer?" The people appealed to us for review under C.A.R. 4.1 and § 16–12–102(2), C.R.S. (2011). We now affirm.

## II.

¶4 We agree with the trial court and hold that the defendant's question, "When can I talk to a lawyer?" was an unambiguous request for counsel. Accordingly, we affirm the order of the trial court suppressing Lynn's statements.

### A. Standard of Review

¶5 Our review of a suppression order raises a mixed question of law and fact. *People v. Romero*, 953 P.2d 550, 555 (Colo. 1998). We defer to the court's factual findings if they have support in the record. *Id.* We review legal determinations de novo. *Id.*

### B. Applicable Law

¶6 Once an accused person requests an attorney, police must "scrupulously honor" the request and cease all interrogation until the person has consulted with counsel. *Miranda v. Arizona*, 384 U.S. 436, 474, 504–05, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Bradshaw*, 156 P.3d 452, 456–57 (Colo.2007) (citing *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984)). A request for counsel must be unambiguous and unequivocal·to be sufficient. *Davis v. United States*, 512 U.S. 452, 461–62, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). In determining whether a request for counsel was sufficient, the trial court must consider whether the accused's statements "can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)

(emphasis omitted). The request must be clear enough that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459, 114 S.Ct. 2350. The accused's request is unambiguous when it puts the officers on notice that the defendant intends to exercise his right to counsel and his right against self-incrimination. *Bradshaw*, 156 P.3d at 457. Because suspects may not be legally sophisticated or paragons of clarity in their use of language, when reviewing a defendant's statement for an alleged ambiguity, courts must give a broad, rather than a narrow, interpretation to a defendant's request for counsel. *Romero*, 953 P.2d at 554–55.

■■■ ¶ 7 Trial courts are to determine whether a request for counsel is ambiguous by the totality of the circumstances. *Id.* at 555. In assessing the totality of the circumstances, the court may consider such factors as the words spoken by the interrogating officer; the words used by the suspect in referring to counsel; the officer's response to the suspect's reference to counsel; the speech patterns of the suspect; the content of the interrogation; the demeanor and tone of the interrogating officer; the suspect's behavior during interrogation; the point at which the suspect invoked counsel; who was present during the interrogation; and the suspect's youth, criminal history, background, nervousness or distress, and feelings of intimidation or powerlessness. *People v. Broder*, 222 P.3d 323, 327 (Colo.2010); *Romero*, 953 P.2d at 555–56.

■■■ ¶ 8 If the accused's statements concerning the right to counsel are ambiguous, police may engage in a limited inquiry with the accused for the sole purpose of determining whether the ·accused has requested an attorney. *Broder*, 222 P.3d at 329; *People v. Benjamin*, 732 P.2d 1167, 1170 (Colo.1987). In this instance, the interrogation must cease immediately except for very limited questions designed to clarify the ambiguous statement or to clarify the accused's wishes regarding the presence of counsel. *Bradshaw*, 156 P.3d at 458; *Benjamin*, 732 P.2d at 1171. But even this limited inquiry is possible only after an ambiguous statement regarding representation; such an inquiry is impermissible following an unambiguous request. *Bradshaw*, 156 P.3d at 458. Following an unambiguous request, *all* questioning must cease. *Romero*, 953 P.2d at 554.

■■ ¶ 9 Where the statements sought to be suppressed are audio- or video-recorded, and there are no disputed facts outside the recording controlling the issue of suppression, we are in a similar position as the trial court to determine whether the statements should be suppressed. *People v. Madrid*, 179 P.3d 1010, 1014 (Colo.2008). We undertake an independent review of the recording to determine whether the statements were properly suppressed in light of the controlling law. *Id.*

## C. Application to this Case

■■ ¶ 10 In addition to Lynn's words, the trial court considered six factors in determining Lynn's request for counsel to have been unambiguous: (1) the request came during the *Miranda* advisement; (2) Lynn knew first degree assault charges were intended; (3) Lynn was in custody; (4) Lynn asked about his mother and wanted to speak with her; (5) Huston had reminded Lynn several times that he need not make a statement; and (6) Huston had at least twice described the assault as "brutal."

¶ 11 The words Lynn used were similar to those used by the defendant in *People v. Harris*, 191 Colo. 234, 235, 552 P.2d 10, 11 (1976), who asked, "When can I get a lawyer?" We affirmed the trial court's suppression order in that case, holding that the question constituted a "request for an attorney" which placed the police officers on notice that the defendant intended to exercise his constitutional rights. *Id.* at 236–37, 552 P.2d at 12. We emphasized that the request was "adequate" even though it was not "in the most sophisticated or legally proper form." *Id.* at 237, 552 P.2d at 12.

¶ 12 *Harris* controls the outcome of this case. While we also found factors such as youth, timidity, and inexperience at play in *Harris*, the trial court in the present case found several other factors contributing to

the unambiguousness of Lynn's request for counsel. In other cases, we have already found several of these factors to have legal significance to the question of unambiguity. *See Bradshaw,* 156 P.3d at 458 (significance of the accused asking the interrogator about the nature of the charge and the class of the offense); *People v. Adkins,* 113 P.3d 788, 793 (2005) (significance of the request coming during the *Miranda* advisement); *People v. Richards,* 194 Colo. 83, 86, 568 P.2d 1173, 1175 (1977) (significance of the pressure placed on the accused by the very nature of incommunicado custodial interrogation). It is not particularly significant, on the other hand, that Lynn's request was phrased as a question which might possibly be interpreted to involve the future rather than the present. *See Bradshaw,* 156 P.3d at 457 (finding an unambiguous request for counsel in the defendant's use of a "future imperative" sentence, "I'm going to have to talk to an attorney about this.").

¶ 13 While Lynn was older than Harris, and had prior contact with the criminal justice system, those facts are not sufficient to distinguish this case from *Harris.* We hold that, in order to "scrupulously honor" Lynn's *Miranda* rights, Huston should have ceased questioning following Lynn's question, "When can I talk to a lawyer?" *See Bradshaw,* 156 P.3d at 456–57. As in *Harris,* the question, interpreted broadly, reasonably could be construed as a request for counsel. *See Harris,* 191 Colo. at 237, 552 P.2d at 12–13.

¶ 14 The People argue that Huston "did recognize the request as some sort of question regarding the Defendant's rights," and therefore regarded it as equivocal. But we have repeatedly held that "[t]he question of whether an accused invoked the right to counsel is an objective inquiry"—which is to say, Huston's state of mind has no bearing on our inquiry. *Adkins,* 113 P.3d at 791. What matters is whether Lynn's question "could reasonably be construed" as a request for counsel, and in this case, like in *Harris,* it can. *Id.* at 791, 797 (quoting *Romero,* 953 P.2d at 556). As the United States Supreme Court has explained, the purpose of making the inquiry objective is "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Davis,* 512 U.S. at 458–59, 114 S.Ct. 2350. If we were to distinguish Lynn's question to Huston from the similar question by the defendant in *Harris,* we would inject considerable confusion into the law and thwart the function of the objective inquiry.

¶ 15 Huston responded to Lynn's unambiguous request ("When can I talk to a lawyer?") with what the People characterize as a limited inquiry for the sole purpose of determining whether the accused requested an attorney ("You want to talk to a lawyer? You say that, I'm done. Do you want to talk to a lawyer now?"). But *Davis* and our own case law do not allow the interrogator to pursue any sort of inquiry, no matter how limited, to clarify an accused's statement regarding counsel unless the statement is ambiguous. Where, as here, the request is unambiguous, no such follow-up is permissible.

¶ 16 Furthermore, Huston's follow-up was not, in fact, an inquiry limited to clarification of Lynn's question. Added to his search for clarity ("You want to talk to a lawyer?") was a subtle nudge to get Lynn to decline to talk to an attorney and instead continue answering Huston's questions ("You say that, I'm done."). In this way, this case is similar to *Richards,* where the interrogator reinitiated questioning after an unambiguous request for counsel with the innocuous-sounding remark to the defendant that "if he (Richards) felt like talking, I would be glad to listen." 194 Colo. at 85, 568 P.2d at 1174. We affirmed the suppression of the statements made after this remark because "[i]f the police may try to subtly secure a waiver of rights after the accused has requested an attorney, the rights guaranteed by Miranda would be illusory." *Id.* at 87, 568 P.2d at 1175. It is for this reason that the "limited inquiry" we outlined in *Broder* must be limited strictly to whether the accused is requesting an attorney, and not venture into points of *Miranda* law that may influence the accused's response. As in *Richards,* the interrogator in this case overstepped by subtly attempting to prevent Lynn from restating his desire to talk to an attorney.

¶ 17 Lynn's follow-up question ("If I do this, can I also talk to a lawyer after?") is irrelevant to our inquiry. The fact that "later statements might be construed as equivocal or ambiguous [is] not relevant to the question" of whether an earlier statement was unambiguous. *People v. Kleber*, 859 P.2d 1361, 1364 (Colo.1993). In other words, "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* (quoting *Smith*, 469 U.S. at 100, 105 S.Ct. 490).

¶ 18 Based on the recording, Huston's interrogation of Lynn eliminates any doubt that Huston was not seeking to "scrupulously honor" Lynn's request for counsel. Instead, he proceeded at length to explain why he thought Lynn should confess to the alleged assault. "I want to hear your side of it," he said. "[T]hat's what I want to hear from you. I want to hear your complete side of it." Apparently concerned that Lynn was focusing on the top part of the *Miranda* waiver form enumerating Lynn's rights, Huston enjoined, "no, but you got to sign the bottom." This series of remarks and actions by Huston demonstrates that he was not making a limited inquiry for the purpose of determining whether Lynn was requesting a lawyer. To the contrary, he was clearly trying to convince Lynn to waive his rights in writing and to prompt Lynn to divulge his account of the alleged assault.

¶ 19 Lynn's request for a lawyer was not ambiguous; it was assertive in tone and said without ambiguity. Listening to the tape clearly discloses that it was Huston who attempted to inject ambiguity by suggesting he would help Lynn with the DA if Lynn would talk to him despite his clear request for a lawyer. Huston said he would "get going with the case and figure out what I'm going to tell the DA." If he knew Lynn's side of it, he would "present that with the case." But if Lynn wanted to talk to a lawyer, "I got to go." Huston was not simply clarifying the request for an attorney. Rather, he stated a consequence to Lynn for choosing to invoke his right to counsel, that Huston could no longer help him.

¶ 20 In conclusion, Huston did not scrupulously honor Lynn's unambiguous request for counsel. Instead, he obtained incriminating statements from Lynn without counsel present, contrary to Lynn's unambiguous request. The trial court was therefore correct to suppress Lynn's statements.

### III.

¶ 21 Accordingly, we affirm the order of the trial court.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

¶ 22 Because I believe the majority misstates the controlling federal law with regard to both the meaning and effect of an unambiguous request for counsel, and is led by this misunderstanding of the appropriate federal standards to a result I believe would not be condoned by the Supreme Court, I respectfully dissent.

¶ 23 Although it has been criticized for doing so in the past, *see, e.g., People v. Bradshaw*, 156 P.3d 452, 460 n. 1 (Colo.2007) (Coats, J., dissenting), the majority once again unselfconsciously conflates the "scrupulously honor" test, which applies only to the invocation of a defendant's right to remain silent during custodial interrogation, with the "*Edwards* bright line" rule, *see Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which applies, by contrast, to a defendant's invocation of his right to counsel. While the latter standard provides an even stricter prohibition against further interrogation than the former, the distinction is not without significance for the majority's holding in light of the role played by that very distinction in the Supreme Court's choice to risk denying an inarticulate defendant the benefits of the bright line rule rather than risk a loss of clarity and ease of application by forcing officers to make difficult judgment calls about what a suspect really wants. *See Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Largely because of the "'rigid' prophylactic rule" of *Edwards*, the *Davis* Court expressly held it to be applicable only where

an accused actually does invoke his right to counsel—not whenever he might be (or his request could be understood as) invoking that right. *Id.* at 458–59, 114 S.Ct. 2350. Precisely because of the less forgiving effect of the *Edwards* bright line rule, a number of jurisdictions have declined to extend the holding of *Davis* to invocation of the right to remain silent as well. *See* 2 Wayne R. La-Fave et al., Criminal Procedure § 6.9(g) (3d ed.2007 and Supp.2011).

¶ 24 In addition to muddying the distinction between the *Miranda* guarantees of a right to counsel and a right to remain silent, I believe the majority flatly misstates the holding of *Davis,* and by relying on our own prior holdings, some actually pre-dating *Davis*'s resolution of the question how to handle less than unambiguous requests, *see, e.g., People v. Harris,* 191 Colo. 234, 552 P.2d 10 (1976), literally stands that holding on its head. In *Davis,* the Supreme Court expressly reconsidered its statement in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), to the effect that "invocation of the *Miranda* right to counsel 'requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney,'" 512 U.S. at 459, 114 S.Ct. 2350, explaining that its precedents never intended to require the cessation of questioning whenever a reasonable officer would understand only that the suspect *"might"* be invoking his right to counsel. *Id.* Far from concluding, as does the majority, that what matters is whether a defendant's question "'could reasonably be construed' as ·a request for counsel," maj. op. at ¶ 14 (quoting from *People v. Adkins,* 113 P.3d 788 (Colo.2005) and *People v. Romero,* 953 P.2d 550 (Colo.1998)), the Supreme Court held instead that for a request to be counted as unambiguous, a defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances *would* understand the statement to be a request for an attorney." *Id.* (emphasis added). Rather than "create a third level of prophylaxis to prevent police questioning when the suspect *might* want a lawyer," the Court expressly declined to assign any consequence at all to an ambiguous or equivocal request for counsel. *Id.* at 462, 114 S.Ct. 2350.

¶ 25 By simply changing the word "would" to "could," the majority changes the meaning of "unambiguous request" from a request with a single reasonable interpretation to a request with at least one reasonable interpretation among other reasonable interpretations of which it may also be susceptible—the very definition of ambiguity and precisely the opposite of the Supreme Court's usage in *Davis.* Even if the majority's statement of the law were not incorrect, however, I could not agree with its application to the specific request in this case. Whatever the majority may surmise about the defendant's actual intent, his question was clearly couched in terms of timing rather than the immediate provision of counsel. As has been noted elsewhere, *see Adkins,* 113 P.3d at 796 (Coats, J., dissenting), *Miranda* never required that an attorney be provided immediately but only that questioning cease upon a request for the assistance of counsel. As a practical matter, police departments do not keep defense counsel on retainer at the stationhouse, and therefore the question when one will be provided, once requested, may be vital to a defendant's rational assessment of his options. Not only would it therefore be reasonable to take the defendant's question at face value, but to instead impute to it an immediate demand for counsel, in light of the "rigid" prophylactic effect of such a demand, requiring as it would the immediate cessation of all further conversation with the defendant, would, as a practical matter, have deprived the defendant of the very information he sought.

¶ 26 Finally, the majority's pre-occupation with the breadth of the investigator's follow-up questions, in conjunction with its assertion that police may respond to ambiguous statements concerning the right to counsel by engaging in a limited inquiry with the accused for the sole purpose of determining whether the accused has requested an attorney, maj. op. at ¶ 8, could not more clearly demonstrate that the majority completely fails to grasp the import of *Davis.* In *Davis,* the United States Supreme Court took head-on the question whether limited clarifying

questions would sometimes be required, or even permitted, to determine whether a suspect actually intended to request the intercession of counsel. 512 U.S. at 461–462, 114 S.Ct. 2350. It emphatically answered the question by holding, with four justices in dissent, that in the event of an unambiguous request for counsel, no further questioning of any kind would be permitted; and in the event of anything less than an unambiguous request, no duty of clarification would arise at all. *Id.* While it may be considered good practice to clarify, for the benefit of an inarticulate suspect, an ambiguous request, an officer has no duty to do so or to limit in any way his further questioning. And in the case of an unambiguous request, his duty is to cease further questioning altogether.

¶ 27 I am aware that today's holding is not the first time this court has misapplied, or virtually ignored, *Davis,* in favor of its own pre-*Davis* case law. Because the *Miranda* doctrine is clearly a matter of federal law, as to which this court has never suggested any state constitutional related corollary, however, I continue to view the majority approach to be error. I therefore respectfully dissent.

I am authorized to state that Justice EID joins in the dissent.