Colorado Supreme Court -- January 11, 2016 
2016 CO 01. No. 13SC499. People v. Kutlak.
 

The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 1

Supreme Court Case No. 13SC499 
Certiorari to the Colorado Court of Appeals 
Court of Appeals Case No. 09CA1627

Petitioner: 
The People of the State of Colorado,
v.
Respondent: 
Levent Ray Kutlak.

Judgment Reversed 
en banc
January 11, 2016

Attorneys for Petitioner:
Cynthia H. Coffman, Attorney General
Jillian J. Price, Assistant Attorney General
Denver, Colorado
Attorneys for Respondent:
Douglas K. Wilson, Public Defender
Adam Mueller, Deputy Public Defender
Denver, Colorado
JUSTICE MÁRQUEZ delivered the Opinion of the Court.
JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.

 

¶1          Westminster police arrested Levent Ray Kutlak after he had a physical altercation with members of his wife’s family. Detective Russ Johnson interviewed Kutlak at the police station. After he was read his Miranda rights, Kutlak stated that he had a personal lawyer and asked, “[C]an we get him down here now, or . . . ?” Detective Johnson responded that “it may be difficult” to get in touch with the attorney and that “[i]t may be something we have to do later. It’s entirely up to you.” Moments later, Kutlak stated that he was going to “take a dice roll” and talk with the detective. Kutlak signed a Miranda waiver and proceeded to make incriminating statements regarding the incident.
¶2          Kutlak later moved to suppress the statements he made in the interview with Detective Johnson. The trial court denied Kutlak’s motion and a jury subsequently convicted him of child abuse, first degree criminal trespass, and two counts of third degree assault. The court of appeals reversed the judgment of conviction and remanded for a new trial, concluding that the trial court erred in denying Kutlak’s motion to suppress his statements. The court reasoned that Kutlak unambiguously invoked his right to counsel during the interview and that, because the initial interview never stopped, Kutlak could not have reinitiated further communication with Detective Johnson. The court declined to reach Kutlak’s remaining contentions on appeal.
¶3          We granted the People’s petition for writ of certiorari and now reverse the court of appeals. We first clarify that, in determining whether a suspect in custody has made an unambiguous request for counsel, the proper standard under Davis v. United States, 512 U.S. 452, 459 (1994), is whether “a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Applying this standard, we hold, based on our independent review of the video-recorded interrogation, that Kutlak did not unambiguously and unequivocally invoke his right to counsel. Because Kutlak did not actually invoke his right to counsel, and because he otherwise validly waived his Miranda rights before making incriminating statements to the detective, his statements should not have been suppressed. Accordingly, we reverse the judgment of the court of appeals and remand with instructions to address Kutlak’s remaining contentions on appeal.
I. Facts and Procedural History

¶4          At 2:43 a.m. on May 22, 2008, Westminster police were dispatched on a report of a stabbing that took place during an altercation between Kutlak and his wife’s family. The police arrested Kutlak and brought him to the Westminster Police Department. Detective Johnson contacted Kutlak at the station around 8:30 a.m. and conducted an interrogation. The interrogation lasted approximately an hour and was both audio- and video-recorded.[1] It is undisputed that Detective Johnson properly advised Kutlak of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 444 (1966), including the right to have counsel present during the custodial interrogation. Immediately after theMiranda advisement, the following exchange occurred:
Johnson: Do you understand your rights as I have explained them to you?
Kutlak: Yes.
Johnson: Okay. Do you have any questions about them?
Kutlak: Uh . . . if I, I have—
Johnson: Just about what your rights are. Do you have any questions about—
Kutlak: Yeah, I do, I do have a lawyer.
Johnson: Okay.
Kutlak: A personal lawyer.
Johnson: Okay.
Kutlak: He’s on retainer.
Johnson: Okay.
Kutlak: Um [sigh] . . . I mean . . . like . . . can we get him down here now, or . . . ?
Johnson: It may be difficult. I mean, it’s, it’s difficult to get in touch with him. It may be something we have to do later. It’s entirely up to you.
Kutlak: Is there any way of a long shot, that, I mean . . . we can work this out, and I can go home today or something?
Johnson: You know, I can’t answer that question for you right now. I don’t know the answer to that question right now. But what I need to know is, if you, if you do wanna—
Kutlak: I mean, I’m gonna take a dice roll, I’m gonna take a dice roll and I’m gonna talk to you guys. I mean, I’m not going to lie to you. I’m not going to do anything like that. I just . . . .
Johnson: Okay. Kutlak: I mean—
Johnson: Well I need you to be one-hundred percent certain and one-hundred percent comfortable with doing that. It’s—
Kutlak: Yeah, definitely. If I stop feeling comfortable, I’ll ask to stop.
Johnson: Okay, you certainly can at any time stop this interview if you wish to. Um, so you do understand your rights?
Kutlak: Yes sir.
Johnson: And with those rights in mind you’re willing to answer questions with me at this time?
Kutlak: Yes sir.

Kutlak thereafter signed a Miranda waiver form and made incriminating statements about the incident.
¶5          Kutlak later moved to suppress the statements he made to Detective Johnson. At the hearing on Kutlak’s motion, the prosecution argued that Kutlak’s statements were “not an unambiguous request for counsel,” but rather represented a “strategic decision” by Kutlak to secure his release from jail. Tr. Hr’g 39:7–8, Dec. 12, 2008; see also id. at 40:3–6.
¶6          The trial court denied Kutlak’s motion to suppress. It observed that Kutlak’s invocation of his right to counsel “was, to some extent, ambiguous at that point in time,” noting that Kutlak “never said he wanted a lawyer prior to questioning” and “never clearly iterated that he did not want to speak to . . . the officer without the presence of counsel.” Id. at 44:2–9. The court nevertheless concluded that Kutlak’s statements were sufficient to invoke his right to counsel prior to questioning. However, the court found that Detective Johnson did not interrogate Kutlak after this invocation; rather, Kutlak reinitiated communication with Detective Johnson and waived his right to counsel. The trial court concluded that Kutlak’s constitutional rights were not violated and thus declined to suppress the statements. 

¶7          The court of appeals reversed. People v. Kutlak, No. 09CA1627 (Colo. App. May 23, 2013). Kutlak argued to the court of appeals that the People had conceded that Kutlak’s statements amounted to an unambiguous request for counsel. In response to questioning during oral arguments, the People did not disagree that Kutlak’s statements were an invocation of his right to counsel. Nevertheless, the court of appeals did not rely on the People’s apparent concession, but rather conducted its own independent analysis. It first concluded that Kutlak’s statement that he had a lawyer followed by his question, “Um [sigh] . . . I mean . . . like . . . can we get him down here now, or . . . ?” was an unambiguous request for counsel. Unlike the trial court, however, the court of appeals held that, because the interrogation never stopped after Kutlak’s mention of counsel, Kutlak could not have “reinitiated” further communication with Detective Johnson.
¶8          We granted the People’s petition for writ of certiorari[2]  and now reverse.
II. Analysis
¶9          Under Edwards v. Arizona, 451 U.S. 477, 484–85 (1981), a suspect in custody who unambiguously invokes his right to counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless he validly waives his earlier request for counsel. Smith v. Illinois, 469 U.S. 91, 94–95 (1984). The “rigid prophylactic rule” of Edwards embodies two distinct inquiries: first, whether the accused actually invoked his right to counsel; and second, if so, whether he initiated further discussions with the police and knowingly and intelligently waived the right he previously invoked. Id. at 95.

¶10          The People have taken inconsistent positions in this case on whether Kutlak’s statements amounted to an unambiguous request for counsel. The record reveals that at the suppression hearing, the prosecution challenged Kutlak’s statements as ambiguous. However, when asked by the court of appeals, “Do you disagree that this was an invocation?” counsel for the People responded, “No, I don’t.” Likewise, the People’s initial briefing to this court focused on whether Kutlak reinitiated discussions with Detective Johnson, apparently conceding that Kutlak’s statements amounted to an unambiguous request for counsel. Yet in response to questioning from this court during oral argument, the People took a different position and contended that Kutlak’s statements were arguably ambiguous, but acknowledged that the issue had not been briefed.
¶11          We generally have discretion to affirm a trial court’s denial of a motion to suppress on different grounds than those relied upon by the trial court. People v. Aarness, 150 P.3d 1271, 1277 (Colo. 2006). Moreover, the United States Supreme Court has made clear that the Edwards analysis requires courts to first determine whether the suspect actually invoked his right to counsel, Smith, 469 U.S. at 95, and both the trial court and the court of appeals directly addressed this issue. Accordingly, following oral arguments, we requested supplemental briefing from the parties on the issue of ambiguity under the standard articulated by the Supreme Court:

Whether, under Davis v. United States, 512 U.S. 452 (1994), the defendant’s references to counsel were sufficiently unambiguous and unequivocal to invoke the Edwards v. Arizona prohibition on further questioning, and if not, whether United States Supreme Court jurisprudence obligated the police to clarify the defendant’s intent before continuing questioning.
¶12          We now resolve this case on the threshold inquiry of the Edwards analysis. Based on our independent review of the video-recorded interrogation, we hold that Kutlak’s statements did not amount to an unambiguous request for counsel. Because Kutlak did not actually invoke his right to counsel, and because he otherwise knowingly, intelligently, and voluntarily waived his Miranda rights before making incriminating statements to the detective, his statements should not have been suppressed.
A. Standard of Review
¶13          When reviewing a lower court’s decision to suppress statements made by a defendant, the question before the court is a mixed issue of law and fact. People v. Martin, 222 P.3d 331, 334 (Colo. 2010). Where sufficient evidence exists in the record to support the trial court’s findings of fact, we defer to those findings. People v. Madrid,179 P.3d 1010, 1013 (Colo. 2008). However, the legal effect of those facts constitutes a question of law subject to de novo review. Id. at 1014. “[W]here the statements sought to be suppressed are audio- and video-recorded, and there are no disputed facts outside the recording controlling the issue of suppression, we are in a similar position as the trial court to determine whether the statements should be suppressed.” Id. Thus, we may undertake an independent review of the audio or video recording to determine whether the statements were properly suppressed in light of the controlling law. See id.

B. Applicable Law
¶14          In Miranda v. Arizona, 384 U.S. 436, 444, 469–73 (1966), the U.S. Supreme Court held that an accused has the right under the Fifth Amendment to the United States Constitution to have an attorney present during custodial interrogation. The accused must be informed of this right before law enforcement may initiate questioning.Id. at 467–68. When an accused knowingly and voluntarily waives his right to counsel after receiving the Mirandawarnings, police are free to question him. Davis, 512 U.S. at 458. However, under Edwards v. Arizona, when an accused invokes his right to have counsel present during custodial interrogation, he “is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” 451 U.S. at 484–85. The purpose of theEdwards rule is to prevent police from badgering a defendant into waiving his previously asserted right to counsel.Davis, 512 U.S. at 458; Michigan v. Harvey, 494 U.S. 344, 350 (1990); Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983).
¶15          In Davis v. United States, the U.S. Supreme Court held that the applicability of the Edwards rule hinges on whether the accused actually invoked his right to counsel, which is an objective inquiry. See Davis, 512 U.S. at 458. Although invocation of the right to counsel under Miranda “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney,” id. at 459 (quotingMcNeil v. Wisconsin, 501 U.S. 171, 178 (1991)), the Supreme Court clarified in Davis that if a suspect makes a reference to an attorney that is “ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,” its precedents do not require law enforcement to stop questioning him. Davis, 512 U.S. at 459, 461–62; see also id. at 460 (citing Miranda for the proposition that officers need not always cease questioning if a suspect is “indecisive in his request for counsel”). In other words, the Davis Court declined to extend Edwards to require law enforcement officers to cease questioning where a suspect makes a merely ambiguous or equivocal reference to an attorney. See id. Rather, to trigger the rigid prophylactic rule of Edwards, an accused’s request for counsel must be unambiguous. Id. at 458–59.

¶16          The Davis Court explained that, to make an unambiguous request for counsel, the suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances wouldunderstand the statement to be a request for an attorney.” Id. at 459 (emphasis added). The Court reasoned that “when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer,  rule requiring the immediate cessation of questioning ‘would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity,’ because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present.” Id.at 460 (quoting Michigan v. Mosley, 423 U.S. 96, 102 (1975)). Requiring a “clear assertion of the right to counsel” takes into account the need for effective law enforcement and recognizes that “it is police officers who must actually decide whether or not they can question a suspect.” Id. at 460–61. To require questioning to cease whenever a suspect makes a statement that might be a request for an attorney blurs the bright line rule of Edwards and forces officers to make difficult judgment calls about whether the suspect in fact wants a lawyer, while risking suppression of the suspect’s statements if the officer guesses wrong. Id. at 461.

¶17          Finally, the Davis Court observed that when a suspect does make an ambiguous or equivocal statement, “it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.”Id. It emphasized, however, that unless the suspect’s statement is an unambiguous and unequivocal request for counsel, the officers have no obligation to stop questioning him. Id. at 461–62.
¶18          In analyzing whether a suspect’s statements amount to an unambiguous invocation of the right to counsel, a handful of our post-Davis cases have misstated the ambiguity standard under Davis. In addition, some of our cases hold, contrary to Davis, that interrogation must cease following an ambiguous reference to counsel, except for very limited clarifying questions. It is our obligation to correct such error. See People v. Porter, 2015 CO 34, ¶ 23, 348 P.3d 922, 927; People v. Novotny, 2014 CO 18, ¶ 26, 320 P.3d 1194, 1203. We therefore take this opportunity to clarify the proper standard and to overrule language in our prior cases that materially deviates from the standard articulated by the U.S. Supreme Court in Davis. Although stare decisis principles require this court to follow the rule of law it has established in earlier cases, Bedor v. Johnson, 2013 CO 4, ¶ 23, 292 P.3d 924, 929, we will depart from our precedent where, as here, “sound reasons exist for doing so,” People v. Blehm, 983 P.2d 779, 789 (Colo. 1999).

¶19          A few years after Davis, we noted in People v. Romero, 953 P.2d 550, 554 (Colo. 1998), that our pre-Davis decisions addressing what constitutes a sufficiently clear invocation of the right to counsel were consistent withDavis and earlier U.S. Supreme Court precedent. Indeed, we quoted Davis in articulating that a request for counsel must be sufficiently clear that a reasonable police officer in the circumstances “would  understand the statement to be a request for an attorney.” Id. (emphasis added) (quoting Davis, 512 U.S. at 459). However, in applying Davis in that case, we restated the legal standard as whether “the suspect’s responses reasonably could be construed by a police officer to mean that the suspect wanted a lawyer.” Id. at 556 (emphasis added).
¶20          Several years later, in People v. Adkins, 113 P.3d 788, 792 (Colo. 2005), we again observed that our decisions addressing ambiguity in this context are consistent with Davis and quoted the Davis standard. Again, however, we proceeded to restate the legal standard as whether an accused’s responses “reasonably could be construed” as a request for counsel. Id. (emphasis added) (quoting Romero, 953 P.2d at 556).
¶21          Most recently, in People v. Lynn, 2012 CO 45, ¶ 6, 278 P.3d 365, 368, we quoted the Davis standard, but in applying Davis, we stated that “[w]hat matters is whether [the accused’s] question ‘could reasonably be construed’ as a request for counsel,” id. at ¶ 14, 278 P.3d at 369 (emphasis added) (quoting Adkins, 113 P.3d at 791). In addition, we held that, if an accused’s statement is ambiguous, “the interrogation must cease immediately except for very limited questions designed to clarify the ambiguous statement or to clarify the accused’s wishes regarding the presence of counsel.” Id. at ¶ 8, 278 P.3d at 368. This particular statement is directly contrary to Davis, and rests on a line of case law that can be traced back to People v. Benjamin, 732 P.2d 1167, 1171 (Colo. 1987), a pre-Davisdecision from this court. Lynn, ¶ 8, 278 P.3d at 378 (citing People v. Bradshaw, 156 P.3d 452, 458 (Colo. 2007);Benjamin, 732 P.2d at 1171); see also People v. Broder, 222 P.3d 323, 329 (Colo. 2010) (same); People v. Kleber,859 P.2d 1361, 1363 (Colo. 1993) (citing Benjamin, 732 P.2d at 1171).
¶22          Romero, Adkins,and Lynn improperly suggest that an “unambiguous” request for counsel is any statement that reasonably “could be construed” as such a request— instead of statements that a reasonable officer “would understand” to be a request for a lawyer. Davis, 512 U.S. at 459. By defining an unambiguous request to include all statements that reasonably “could be construed” to be a request for counsel, our post-Davis precedents have subtly, but materially, expanded the Davis standard to encompass statements capable of multiple logical interpretations, at least one of which “could” be a request for counsel. Such statements, however, are the “very definition of ambiguity.”Lynn, ¶ 25, 278 P.3d at 371 (Coats, J., dissenting). This approach runs counter to the core holding of Davis and its rationale. See Davis, 512 U.S. at 459–62. Moreover, although our case law properly encourages law enforcement to clarify an ambiguous statement to determine a suspect’s wishes regarding the presence of counsel, see Lynn, ¶ 8, 278 P.3d at 368; Broder, 222 P.3d at 329; Bradshaw, 156 P.3d at 458; Benjamin, 732 P.2d at 1170–71, Davisimposes no rule requiring officers to do so, nor does it obligate law enforcement to limit its questioning to such clarifying questions in the wake of an ambiguous reference to counsel. Davis, 512 U.S. at 461–62; see also  People v. Arroya, 988 P.2d 1124, 1131 (Colo. 1999) (noting that, under Davis, “if the suspect’s request is ambiguous or equivocal, then police need not make an effort to clarify the statement and are free to continue the questioning”).

¶23          Accordingly, we take this opportunity to clarify that, in determining whether an accused has invoked his right to counsel, the proper inquiry under Davis is whether “a reasonable police officer in the circumstances wouldunderstand the statement to be a request for an attorney.” Davis, 512 U.S. at 459 (emphasis added). Davis made clear that the Edwards rule should not be applied “to prevent police questioning when the suspect might want a lawyer.” Id. at 462. In short, “[u]nless the suspect actually requests an attorney, questioning may continue.” Id. To the extent our prior cases suggest otherwise, they are hereby overruled.
¶24          Our case law has recognized that suspects “may not be legally sophisticated or paragons of clarity in their use of language.” Romero, 953 P.2d at 554–55; see also Lynn, ¶ 6, 278 P.3d at 368; Broder, 222 P.3d at 326–27;Adkins, 113 P.3d at 792. Accordingly, we have assessed whether a request for counsel is ambiguous by considering the totality of the circumstances, including such factors as the words spoken by the interrogating officer; the words used by the accused in referring to counsel; the officer’s response to the accused’s reference to counsel; the speech patterns of the accused; the demeanor and tone of the interrogating officer; the accused’s behavior during interrogation; and the accused’s youth, criminal history, background, nervousness or distress, and feelings of intimidation or powerlessness. Lynn, ¶ 7, 278 P.3d at 368; Broder, 222 P.3d at 327; Adkins, 113 P.3d at 792–93;Romero, 953 P.2d at 555–56. These factors remain relevant in assessing the totality of the circumstances when applying Davis’s objective standard.

¶25          Having clarified the proper standard under Davis, we now apply that standard to the facts of this case.
C.Application
¶26          Based on our independent review of the video recording of the interrogation, we conclude that, under the totality of the circumstances, Kutlak’s references to counsel did not amount to an unambiguous and unequivocal request for counsel.
¶27          It is unclear from Kutlak’s remarks whether he was actually requesting his lawyer or whether he was simply exploring the logistics and timing of possibly securing counsel’s presence during the interrogation. Indeed, Kutlak’s behavior and speech patterns—particularly the way he shrugged when asking “can we get him down herenow, or . . . ?” coupled with the general uncertainty reflected in his demeanor—suggest that he was merely inquiring how long it might take to acquire counsel’s presence. Significantly, Kutlak’s question arose immediately after Detective Johnson asked if he had any questions regarding his rights. Although Kutlak’s statements “could be construed” as a request for counsel, an equally logical inference from Kutlak’s statements is that he was weighing his options and asked a question to help him decide whether to request his counsel’s presence. As such, his statements were ambiguous. See Broder, 222 P.3d at 327 (accused’s speech patterns and hesitation indicated he “was merely undecided about whether he wanted to invoke the right to counsel”); Benjamin, 732 P.2d at 1171–72 (accused’s request was ambiguous where he “simply desired to know whether, if he chose to be represented by an attorney, he would be able to have such representation without cost to himself”). The video recording further reveals Kutlak’s indecision, as reflected in his tone and body language. Cf. Scott v. Harris, 550 U.S. 372, 387 (2007) (Breyer, J., concurring) (stating that “watching the video footage of the car chase made a difference to my own view of the case,” and, having done so, concluding that no reasonable jury could find that the pursuing officer acted in violation of the Constitution). Finally, the fact that, moments later, Kutlak twice stated that he was going to “take a dice roll” and continue the interview indicates his conscious decision not to invoke his right to counsel.

¶28          Detective Johnson’s responses to Kutlak’s questions reinforce our conclusion that Kutlak’s reference to counsel was ambiguous. Detective Johnson did not ask further questions of Kutlak immediately following his mention of counsel, but instead responded simply that “[i]t may be difficult” to get in touch with the attorney and that “[i]t may be something we have to do later. It’s entirely up to you.” Moreover, although Detective Johnson was not required to clarify Kutlak’s wishes with respect to counsel, Davis, 512 U.S. at 461–62, he nonetheless attempted to do so. After Kutlak asked whether he might be able to go home that day, Detective Johnson explained that he did not know but then asked: “But what I need to know is, if you, if you do wanna . . . .” Kutlak cut Detective Johnson’s clarifying question short, stating “I’m gonna take a dice roll, I’m gonna take a dice roll and I’m gonna talk to you guys.” In a further effort to clarify, Detective Johnson asked Kutlak if he was “one-hundred percent certain and one-hundred percent comfortable with doing that,” and Kutlak responded, “Yeah, definitely. If I stop feeling comfortable, I’ll ask to stop.” This colloquy clearly indicates that Kutlak understood his rights and did not invoke his right to counsel at that time.

¶29          We perceive here none of the badgering or abuse that the Edwards rule was designed to prevent. See Michigan v. Harvey, 494 U.S. 344, 350 (1990) (noting that Edwards “established another prophylactic rule designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights”); Oregon v.  Bradshaw, 462 U.S. 1039, 1044 (1983).
¶30          We also note that Kutlak was not unfamiliar with the criminal justice system, having had at least one prior misdemeanor conviction as an adult and multiple juvenile adjudications. Further, Kutlak had vocational training, was employed as a mechanic and, as the video recording clearly shows, is a native English speaker. Accordingly, the ambiguity in his statements likely did not stem from confusion or any language barrier, but rather, from indecision with respect to his right to counsel. Compare Broder, 222 P.3d at 327 (“[I]t is clear from the interrogation video that [accused’s] inability to clearly articulate his request was not because he was speaking in an overly-deferential manner or because he lacked sophistication, or even because he was too nervous and upset. Rather, it appears that [accused] was merely undecided about whether he wanted to invoke the right to counsel.”), with Davis, 512 U.S. at 470 n.4 (Souter, J., concurring) (“[I]ndividuals who feel intimidated or powerless are more likely to speak in equivocal or nonstandard terms when no ambiguity or equivocation is meant.”), and People v.  Harris, 552 P.2d 10, 12 (Colo. 1976) (“The accused was young, timid, and inexperienced in such situations; his failure to make a forceful demand for counsel does not dilute the fact that he made a request.”).

¶31          Finally, Kutlak knowingly and voluntarily waived his Miranda rights before answering Detective Johnson’s questions. See Davis, 512 U.S. at 458 (recognizing that Miranda rights require the special protection of the knowing and intelligent waiver standard). “A waiver is knowing and intelligent when made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it.” People v. Platt, 81 P.3d 1060, 1065 (Colo. 2004). During the exchange between Kutlak and Detective Johnson, Kutlak repeatedly talked over Detective Johnson’s attempts to clarify. Kutlak made it clear that he did not intend to invoke his Fifth Amendment right to counsel by stating that he was going to “take a dice roll” and then signing the Miranda waiver form. Moreover, after Detective Johnson asked Kutlak whether he was “one-hundred percent certain and one-hundred percent comfortable” with talking to him, Kutlak responded, “Yeah, definitely. If I stop feeling comfortable, I’ll ask to stop.” Finally, Detective Johnson again confirmed that Kutlak understood his rights and asked whether he was willing to answer questions. Kutlak responded, “Yes sir.” These exchanges, coupled with the signed Miranda waiver form, confirm Kutlak’s knowing and voluntary waiver of his Miranda rights.

III. Conclusion
¶32          We conclude that, under the totality of the circumstances, Kutlak’s statements did not constitute an unambiguous request for counsel. Because Kutlak did not actually invoke his right to counsel, and because he otherwise validly waived his Miranda rights before making incriminating statements to the detective, his statements should not have been suppressed. Accordingly, we reverse the judgment of the court of appeals. We remand this case to the court of appeals with instructions to address Kutlak’s remaining contentions on appeal.

[1] This audio/video recording is in the record before us as People’s Exhibit 1 and has been carefully reviewed by this court.
[2] The People’s petition for writ of certiorari presented the issue as follows:
Whether the court of appeals erred by reversing the trial court’s denial of defendant’s motion to suppress statements where police officer responded to defendant’s request for counsel by telling him that it might not be possible to get defendant’s attorney to the station that day and defendant chose to talk to police without his attorney present.
 

JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.

 JUSTICE GABRIEL, dissenting.

¶33          The majority holds that Kutlak’s statements did not constitute an unambiguous and unequivocal invocation of his right to counsel and that Kutlak validly waived his right to counsel before making the statements that a division of the court of appeals concluded should have been suppressed. In so holding, the majority overrules portions of a number of our prior cases. The majority reaches the foregoing conclusions notwithstanding the facts that (1) in their initial briefs, no party raised the invocation issue or asked us to overrule any of our prior precedent; and (2) we did not grant certiorari to address the invocation issue but rather raised that issue sua sponte, after briefing and oral arguments were complete, and then requested supplemental briefs.
¶34          In my view, the majority’s analysis is inconsistent with our proper role, and for that reason, I disagree with that analysis. Even were I to conclude that it is proper for us to reach the invocation issue, however, I would still disagree with the majority’s analysis because I believe that it is inconsistent with well-settled law. Accordingly, I respectfully dissent.
I. Facts and Procedural History
¶35          The majority has accurately set forth the facts relating to the interrogation at issue, and I need not repeat those facts here. It is important to note, however, that (1) in the trial court and in the court of appeals, the prosecution conceded that Kutlak had sufficiently invoked his right to counsel; (2) both the trial court and the division of the court of appeals below so held, with the division concluding that the request was unambiguous; (3) as the People observe, the question of whether Kutlak’s invocation was sufficient was outside our certiorari grant, which assumed the sufficiency of the invocation; and (4) the People conceded the invocation issue in their initial briefing before us and did not provide any analysis of that issue. In short, no party addressed the invocation issue, much less asked us to overturn any prior case law on the question, until we raised that issue sua sponte and requested supplemental briefing. And even then, no party asked us to overrule the “can reasonably be construed” standard that we have previously employed. See, e.g., People v. Lynn, 2012 CO 45, ¶ 6, 278 P.3d 365, 367. To the contrary, the People reiterated that standard in their supplemental brief.

II. Analysis
A. Procedural Issues
¶36          As the Supreme Court has stated:
In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro se litigant’s rights. But as a general rule, “[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.”
Greenlaw v. United States,554 U.S. 237, 243–44 (2008) (footnote and citation omitted) (quoting Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)).
¶37          I recognize that the party presentation rule does not constrain our obligation to ascertain controlling law.See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.,783 F.3d 976, 980 (4th Cir. 2015). Nor are we limited to the particular legal theories advanced by the parties when an issue or claim is properly before us. Kamen v.  Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991). These principles, however, presume that an issue is properly presented and must be decided. Thus, “[i]t is axiomatic that in any appellate proceeding this court may consider only issues that have actually been determined by another court or agency and have been properly presented for our consideration.” Comm. for Better Health Care for All Colo. Citizens v. Meyer, 830 P.2d 884, 888 (Colo. 1992) (emphasis added).

¶38          Here, the parties did not properly present the invocation issue on which the majority bases its decision. Nor do I believe that we need to reach that issue in order to address the question that the parties did present, namely, whether Kutlak reinitiated the conversation after invoking his right to counsel. All parties in this case consistently took the position that no question of the sufficiency of the invocation was presented. Likewise, in their initial briefs, no party raised any issue requiring us to revisit our prior case law. And although the People argued in their supplemental brief that if an invocation is ambiguous, then the police are not obligated to clarify a defendant’s intent before continuing to question the defendant, the People did not ask us to overrule the “can reasonably be construed” standard governing requests for counsel but rather reiterated that standard.
¶39          In light of the foregoing, I believe that the majority’s analysis in this case is inconsistent with the party presentation principle and, thus, with our proper role. See Greenlaw, 554 U.S. at 243. Specifically, other than with respect to questions like those involving subject matter jurisdiction, see Brock v. Nyland, 955 P.2d 1037, 1043 (Colo. 1998), overruled on other grounds by Finnie v. Jefferson Cty. Sch. Dist. R-1, 79 P.3d 1253 (Colo. 2003); C.R.C.P. 12(h)(3), I do not believe that it is our role to notice and address issues that no party has raised and that need not be decided. Rather, it is the parties’ role to frame the issues for our decision, and questions not properly presented by the parties must await another day. See Greenlaw, 554 U.S. at 243–44.

¶40          I am not persuaded otherwise by the majority’s assertions that we are not bound by the People’s repeated concessions and that we may determine the issue on appeal on any ground supported by the record, whether relied on or even considered by the parties below. See Maj. op. ¶¶ 10–11. In my view, the case authority on which the majority relies does not justify our disregarding the party presentation principle or the central tenets of our adversary system from which that principle derives.
B. Merits
In light of the foregoing, I believe that the only question properly before us is whether Kutlak reinitiated the interrogation, a question that the majority does not address. Nonetheless, for the sake of providing a complete analysis, I will address both the invocation and reinitiation issues.
1. Applicable Law
¶41          In Edwards v. Arizona, 451 U.S. 477, 484–86 & n.9 (1981), the Supreme Court held that when an accused has invoked his right to have counsel present during a custodial interrogation, he or she is not subject to further interrogation unless the accused (1) initiates further communication, exchanges, or conversations with the police and (2) knowingly and intelligently waives the right to have counsel present. Accord Davis v. United States, 512 U.S. 452, 458 (1994). Both the Supreme Court and this court have consistently described Edwards as creating “a ‘bright-line rule’ that all questioning must cease after an accused requests counsel.” Smith v. Illinois, 469 U.S. 91, 98 (1984);accord People v. Kleber, 859 P.2d 1361, 1363 (Colo. 1993).

¶42          To be sufficient, a request for counsel must be unambiguous and unequivocal. Lynn, ¶ 6, 278 P.3d at 367;People v. Bradshaw, 156 P.3d 452, 457 (Colo. 2007). In determining whether an accused’s invocation of the right to counsel was sufficient, we must give a broad, rather than a narrow, interpretation to the accused’s request. Lynn, ¶ 6, 278 P.3d at 368; Kleber, 859 P.2d at 1363. This is because an accused may not be legally sophisticated or a paragon of clarity in his or her use of language. Lynn, ¶ 6, 278 P.3d at 368; People v. Romero, 953 P.2d 550, 554–55 (Colo. 1998). Thus, the accused’s request need only be sufficiently clear so that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. Davis, 512 U.S. at 459; Lynn, ¶ 6, 278 P.3d at 368; Bradshaw, 156 P.3d at 457. And although the majority purports to overrule the “can reasonably be construed” standard based on its reading of Davis, the Davis Court stated, “Invocation of the Miranda right to counsel ‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.’” Davis, 512 U.S. at 459 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)). I perceive nothing in Davis suggesting an intent to overturn or modify that standard.

¶43          If a request for counsel is sufficiently clear, then the police must “scrupulously honor” that request.Bradshaw, 156 P.3d at 457. If the request is ambiguous, however, then the interrogating officer may, but need not, ask limited questions designed to clarify the accused’s wishes regarding the presence of counsel. See Davis, 512 U.S. at 459–61; accord Lynn, ¶ 8, 278 P.3d at 368; Kleber, 859 P.2d at 1363. An accused’s post-request responses to further interrogation, however, “may not be used to cast retrospective doubt on the clarity of the initial request itself. Such subsequent statements are relevant only to the distinct question of waiver.” Smith, 469 U.S. at 100; accord Lynn, ¶ 17, 278 P.3d at 370; Kleber, 859 P.2d at 1364. As noted above, if an accused makes an unambiguous request for counsel, then the police must cease further interrogation unless the accused initiates further communication, exchanges, or conversations with the police. Davis, 512 U.S. at 458; Edwards, 451 U.S. at 484–85. For a suspect to reinitiate a conversation, his or her comments must demonstrate a willingness and a desire to discuss the investigation. People v. Redgebol, 184 P.3d 86, 99 (Colo. 2008). The prosecution must prove such a waiver of the right to counsel by clear and convincing evidence. Id.
2. Invocation

¶44          Applying the foregoing principles here, I agree with all of the parties and with the division of the court of appeals that Kutlak unambiguously and unequivocally requested counsel. As the majority points out, Kutlak stated that he had a lawyer on retainer and then asked, “[C]an we get him down here now . . . ?” In my view, this expression of the desire for counsel is at least as unambiguous and unequivocal as the requests that we have consistently deemed sufficient in our prior cases. See, e.g., Bradshaw, 156 P.3d at 456 (concluding that “I’m going to have to talk to an attorney about this” was an unambiguous and unequivocal demand that the interrogation end and counsel be summoned); People v. Adkins, 113 P.3d 788, 790, 792–93 (Colo. 2005) (holding unambiguous the accused’s request for an attorney when the officer was informing the accused of his right to counsel and the accused interrupted, “[W]hy don’t I have one now?”); People v. Fish, 660 P.2d 505, 509 (Colo. 1983) (holding unambiguous the accused’s request for counsel when he asked whether he needed an attorney and the interrogating officers assured him that he did not), abrogated on other grounds by People v. Hopkins, 774 P.2d 849, 852 (Colo. 1989).

¶45          I am not persuaded otherwise by the majority’s findings that Kutlak was merely inquiring as to the logistics and timing of possibly securing counsel’s presence and that a logical inference was that he was merely weighing his options with respect to counsel. In my view, these findings are unsupported by the evidence in the record. Moreover, they appear to construe the conversation in the light most favorable to the prosecution, contrary to our settled case law requiring that we construe Kutlak’s statements broadly, recognizing that he might not be legally sophisticated or a “paragon of clarity” in his use of language. Romero, 953 P.2d at 554–55; Kleber, 859 P.2d at 1363. Accordingly, I believe that Kutlak’s invocation of his right to counsel was unambiguous and unequivocal and that Detective Johnson was therefore required to cease all questioning, unless and until Kutlak reinitiated the conversation. The question thus becomes whether Kutlak so reinitiated the conversation. I do not believe that the record supports a finding that he did so.

3. Reinitiation
¶46          With respect to the question of whether Kutlak reinitiated the conversation after he invoked his right to counsel, I believe that our prior decisions in Bradshaw and Redgebol are on point.
¶47          In Bradshaw, 156 P.3d at 458, the defendant unambiguously requested counsel. Rather than honoring that request, the interrogating officer asked whether the defendant was saying that the sexual contact at issue was consensual. Id. Only after so inquiring did the officer seek to confirm whether the defendant wanted to speak with a lawyer, and the defendant responded, “Well, yeah.” Id. Again, the officer did not cease the interrogation and immediately contact the public defender, as we suggested he was required to do. Id. Rather, he asked several more times whether the defendant would continue the interrogation, and the defendant ultimately relented, saying, “Alright. Let’s talk.” Id.
¶48          The People contended, as they do here, that they were merely seeking to clarify the defendant’s intent. Id.at 458. They further asserted, as pertinent here, that the defendant reinitiated the interrogation by asking the officer what level of felony he was facing. Id. We rejected both arguments, concluding, among other things, that the defendant “could not have initiated further communication because [the interrogating officer] never stopped the interrogation.” Id. at 459.

¶49          In Redgebol, 184 P.3d at 99, the People argued that the defendant did not unambiguously invoke the right to counsel and even if he did, he reinitiated questioning after doing so. There, the defendant stated that he would like a lawyer. Id.  The interrogating officer confirmed the request and stated that he would stop. Id.  Approximately twenty seconds later, the defendant, who was communicating through an interpreter, indicated that he did not understand and asked whether the officer would question him and then the lawyer would arrive, or whether both the officer and the lawyer would be there. Id.

¶50          After concluding that the defendant had made an unambiguous and unequivocal request for counsel, we rejected the People’s argument that the defendant had reinitiated the conversation when he expressed confusion about how the questioning would proceed. Id. at 99–100. As pertinent here, we noted that the People’s argument regarding reinitiation failed to acknowledge that the alleged reinitiation occurred within thirty seconds of the defendant’s request for counsel. Id. at 99. We further observed that the People had cited no case law from this or any other jurisdiction in which a court had held that a defendant invoked his right to an attorney, thus ending the questioning, and then reinitiated questioning in less than a minute. Id. We then concluded that Bradshaw was controlling, citing with approval its conclusion that because the officer did not end the interrogation, the defendant did not reinitiate it. Id.  at 100.
¶51          Here, the alleged reinitiation of the conversation occurred within twenty-four seconds of Kutlak’s request for counsel. Moreover, I perceive nothing in the record to indicate that Detective Johnson either scrupulously honored Kutlak’s request for counsel or stopped the interrogation. After Kutlak asked whether they could get his counsel there “now,” Detective Johnson did not cease the interrogation and allow Kutlak to obtain the assistance of counsel. To the contrary, the detective told Kutlak, “It may be difficult. I mean, it’s, it’s difficult to get in touch with him. It may be something we have to do later.” In my view, this was not an attempt to clarify Kutlak’s desire for counsel, as the majority finds, nor does it reflect any effort on Detective Johnson’s part to honor Kutlak’s request. To the contrary, the record indicates that it was an effort to continue to engage Kutlak in conversation, in the hope that the alleged (but unfounded) statement of difficulty in getting counsel to the interrogation would persuade Kutlak to keep talking, which is exactly what occurred.

¶52          In these circumstances, I perceive no cessation of the interrogation. Accordingly, for the reasons set forth in Bradshaw and Redgebol, Kutlak could not have reinitiated the conversation with Detective Johnson. Bradshaw, 156 P.3d at 459; Redgebol, 184 P.3d at 100.
¶53          I am not persuaded otherwise by the People’s assertion that Kutlak later expressed a desire to talk, saying, “I’m gonna take a dice roll and I’m gonna talk to you guys.” Had Detective Johnson scrupulously honored Kutlak’s request for counsel, as he was required to do, Kutlak would not have gotten to the point of making that statement, at least not without consulting with counsel first.

¶54          Accordingly, I do not believe that the record supports a finding that Kutlak reinitiated a dialogue with Detective Johnson after invoking the right to counsel. He could not reinitiate a conversation that never stopped.
III. Conclusion
¶55          For these reasons, I would affirm the decision reached by the court of appeals division here, and therefore, I respectfully dissent.
I am authorized to state that Justice HOOD joins in this dissent.
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.